UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

    *ex rel.*

OSMOSE, INC.,

                Plaintiff,

    v.                                   **DECISION AND ORDER**
                                                      09-CV-425S

CHEMICAL SPECIALTIES, INC., and VIANCE,
LLC,

                Defendants.

## I.  INTRODUCTION

Relator Osmose, Inc., filed this qui tam action on behalf of the United States in May 2009, alleging violations of the False Claims Act ("FCA"[1]), 31 U.S.C. § 3729, *et seq*. Osmose asserts that Defendants Chemical Specialties, Inc., and Viance, LLC, have violated the FCA by knowingly selling a defective fire retardant chemical formula to wood treating companies, thereby causing these companies to present fraudulent claims for payment to the United States for the purchase of fire retardant treated wood and plywood products. Defendants move this Court to dismiss the Second Amended Complaint pursuant to section 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that

---

[1]The FCA provides that a private person, known as 'relator,' may file a qui tam action and recover damages on behalf of the United States. 31 U.S.C. § 3730(b); <u>United States ex rel. Mooney v. Americare, Inc.</u>, 06–CV–1806 (FB)(VVP), 2013 WL 1346022, at *1 (E.D.N.Y. Apr. 3, 2013).  Because the action is brought on behalf of the government, the complaint remains under seal for at least 60 days, during which time the government decides to either (1) proceed with the action or (2) decline to take over the action, leaving the relator with the right to conduct the action. 31 U.S.C. § 3730(b)(4). If the prosecution is successful, the relator is entitled to receive some of the proceeds. 31 U.S.C. § 3730(d).

follow, Defendants' motion is granted in its entirety.

## II. BACKGROUND

As alleged in the Second Amended Complaint, Defendant Chemical Specialties, Inc. ("CSI"), is a leading supplier of chemicals for treating wood. (Sec. Amend. Compl. ¶¶ 18-19, Docket No. 46.) In October 2006, CSI and the Rohm and Haas Company[2] entered into a joint venture agreement for the purpose of, among other things, manufacturing and selling fire retardant chemical formula and process for wood treatment. (Id. ¶¶ 2, 19-20.) That joint venture was formed as Viance LLC. (Id. ¶¶ 20.)  Defendant Viance is, as relevant, a manufacturer of D-Blaze®, a chemical and treatment process for creating fire retardant treated wood ("FRTW") and fire retardant treated plywood ("FRTP"). (Id. ¶¶ 2-3, 8.) As the manufacturer, Viance would obtain the necessary code approvals and evaluation reports, such as testing samples of its FRTW or FRTP products at Underwriters Laboratory ("UL") to confirm that the samples meet fire retardant standards. (Id. ¶¶ 8, 51-53.) Successful testing results in the manufacturer's right to use a "UL" stamp or mark, which is placed on each piece of code-compliant material. (Id. ¶ 54.)  Wood treaters and distributors primarily use manufacturer-created literature in the sale of FRTW and FRTP products. (Id. ¶ 60.)

Defendants sell D-Blaze® to wood treaters "as a code-compliant fire retardant product." (Id. ¶ 43.) Purchasers of D-Blaze® pressure treat this wood with the liquid chemicals in accordance with manufacturers' instructions for the purpose of reducing the spread of flames and decreasing smoke development in the event of a fire. (Id. ¶¶ 27, 37,

---

[2]Rohm and Hass was apparently acquired by the Dow Chemical Company in April 2009. (Sec. Am. Compl. ¶ 22.)  Neither company, however, has been named as a defendant.

43, 58.)  "The amount of chemicals infused into the wood – or the 'retention level' – is determined by calculating the 'gauge retention' during the treatment process. The 'gauge retention' is the weight of the chemicals per cubic foot of wood, based on the total weight of chemicals retained and the total volume of wood treated.  Retention levels are measured in 'pounds per cubic foot' or 'pcf.'" (Id. ¶¶ 34-35 (internal paragraph numbering omitted).)

As explained by Relator Osmose, the generally accepted standard for testing fire retardancy, denominated "ASTM E 84," was developed by ASTM International and is practically identical to UL's test, "UL 723." (Id. ¶¶ 62-70.)  Compliance with these tests has been incorporated into code requirements created by the International Code Council ("ICC") and the United States Department of Defense. (Id. ¶¶ 71-85.)   FRTW/FRTP chemical solutions pass these tests when the resulting treated wood has a flame spread index of 25 or less based on the initial 10-minute portion of a test; the flame does not progress more than 10.5 feet in the full 30-minute period, and the wood does not show evidence of significant progressive combustion during the 30-minute period. (Id. ¶ 76.)  Chemicals solution that result in products meeting these requirements are permitted to exhibit a UL stamp that includes a designation of "FR-S." (Id. ¶¶ 54-55.)  Further, where treated wood meets military specifications, the manufacturer may apply for the product to be included on a Department of Defense qualified product list, which is "an important marketing device for FRTW/FRTP manufacturers and suppliers." (Id. ¶¶ 86-87.)

D-Blaze® is available in a variety of different products.  D-Blaze® fire retardant treated wood products include Douglas Fir, Southern Yellow Pine, Alpine Fir, Jack Pine, White Fir, Balsam Fir, Western Hemlock, Red Pine, Ponderosa Pine, Hem/Fir, White Spruce, Spruce-Pine-Fir, Lodgepole Pine, Red Spruce, Black Spruce, Engelmann Spruce,

Basswood, and Red Oak. (Id. ¶ 45.)  D-Blaze® fire retardant treated plywood products include Southern Yellow Pine ("SYP"), Douglas Fir, and Lauan. (Id. ¶ 46.) Relator Osmose alleges that, "[a]ccording to a June 1, 2004 Legacy Report produced by the Evaluation Service of the International Code Council, UL conducted ASTM E 84 tests of D-Blaze® SYP plywood on October 29, 1984.  The results of those tests were relied upon by the ICC Evaluation Service as evidence that D-Blaze® treated lumber and plywood complied with [ICC] Building Codes." (Id. ¶¶ 116-117.)    These tests also resulted in the listing of D-Blaze® products on the Department of Defenses's Qualified Products List. (Id. ¶¶ 79, 119.)

"In 2007, [Relator] Osmose created a 'copycat' formula based upon the D-Blaze® patent and other publicly-available descriptions, which Osmose called FR-2." (Id. ¶ 90.) Although Defendants' specified retention level for D-Blaze® SYP plywood was 0.8 to 1.1 pcf, Osmose had UL test its copycat's compliance with the relevant standards on SYP plywood at retention levels of 1.0 and 1.5 pcf.  (Id. ¶¶ 90-94.)  The SYP plywood treated with the copycat formula at 1.0 pcf failed twice, but the plywood treated at a retention level of 1.5 passed. (Id. ¶¶ 92-96.)  UL conducted additional tests on SYP plywood treated with Osmose's copycat formula in April and June of 2008. (Id. ¶¶ 97-100.)  The treated plywood failed in tests with retention levels of 1.39 pcf and passed at 1.61 pcf. (Id. ¶¶ 98-102.)

In August 2008, UL commenced an investigation of D-Blaze® and informed Viance of its investigation.  (Id. ¶¶ 121.) "Upon information and belief," UL tested samples of D-Blaze® fire retardant treated plywood at that time, and those samples failed to comply with the certification standards reflected in the ICC and Department of Defense specification codes. (Id. ¶¶ 121-122.)

Relator Osmose subsequently contracted with at least two separate private

4

companies in November 2008 and  March 2009 to obtain and test additional samples of

SYP plywood, and all samples tested failed to be ATSM E 84 compliant. (Id. ¶¶ 109-114

(no retention level is specified for these tests).)

In April 2009, UL retracted its "FR-S" certification of D-Blaze® SYP plywood, "but

did not pull its certification on any other D-Blaze® products." (Id. ¶ 123.) "Upon information

and belief," Viance failed to notify the ICC of UL's determination, and instead "continued

to tell its treaters that D-Blaze® was fire retardant and met all applicable building codes."

(Id. ¶¶ 124-127.)  Viance suggested that "the test failures were due to improper processing

by two wood-treatment facilities and did not suggest a widespread failure of the product."

(Id. ¶¶ 127-128.)

> Viance also continued to advise its wood treating company partners to treat
> D-Blaze® SYP plywood to a retention level of 0.8 to 1.1 pcf, even though it
> knew that the wood repeatedly failed when tested at that level.  Viance also
> provided its treaters with a new [UL] stamp for its D-Blaze® SYP plywood.
> Upon information and belief, Viance, not UL, created this stamp.  Even
> though UL had pulled its certification, the new stamp still included the UL
> trademark, although not the FR-S designation.  The stamp also still referred
> to "ASTM 84,' implying that D-Blaze® had passed the ASTM E 84 30-minute
> surface burn test for fire retardancy, even though it had actually failed the
> test.  Viance did not indicate anywhere that D-Blaze® failed to pass the
> additional requirement for fire retardancy – namely, that the flame front not
> reach or exceed 10.5 ft. in 30 minutes of burn time.

(Id. ¶¶ 129-134 (internal paragraph numeration omitted.)  "By no later than January of

2010, Viance advised its wood treater partners to treat SYP plywood to a retention level

of 1.38 to 1.50," and according to UL's online database, this version of D-Blaze® SYP

plywood is certified as "FR-S." (Id. ¶¶ 136-140.)

In June 2011, Relator Osmose again contracted with private companies to test

samples of D-Blaze®, this time for Douglas Fir plywood. (Id. ¶ 143.)  Two of the three

samples obtained from three different wood treating companies failed, and the third was treated to a retention level approximately twice that specified by Viance. (Id. ¶¶ 143-147.) Relator Osmose alleges that "upon information and belief, D-Blaze® applied in accordance with Defendants' specifications will produce similarly deficient test results with all of the species of plywood and dimensional lumber." (Id. ¶ 149.)

Relator Osmose alleges that sales of D-Blaze® FRTW/FRTP have comprised approximately twenty-five percent of the relevant market since 1990. (Id. ¶ 161.) Further, "[v]ia their exclusive treaters and/or distributors, Defendants have sold and continue to sell D-Blaze® to various bureaus and agencies of [the] United States Government, including but not limited to the department of Defense and the Department of State." (Id. ¶ 152.) For example, in 2007, "significant quantities of both D-Blaze® plywood, and various types of D-Blaze® dimensional lumber" were purchased from a wood treater and distributer for construction of the US Embassy in Macedonia. (Id. ¶¶ 163-175.) This same wood treater and distributor, Bowie-Sims-Prange Group ("Bowie"), also sold "D-Blaze®-treated plywood to the U.S. Pacific possession, Wake Island, which is under the control of the Interior Department, and hosts Army and Air Force activities." (Id. ¶ 176.) Further, "[i]n a telephone conversation with an Osmose employee in 2009, Michael Fry of Bowie stated that Bowie sold or delivered D-Blaze® SYP plywood to the United States Navy at the Joint Reserve Base in Carswell, Texas, and to the United States Department of the Interior for use at Wake Island, a United States territory with significant military facilities." (Id. ¶ 178.) Bowie also "had a prime contract with the Department of Defense that included FRTW/FRTP" and, "upon information and belief," sold "D-Blaze®-treated wood to the Navy at the Portsmouth Naval Shipyard." (Id. ¶¶ 179-180.) This allegation appears to be based

on the fact that Portsmouth Shipyard used a large distributer named Graybar for FRTW/FRTP orders, and Graybar allegedly sources its FRTW/FRTP from Bowie. (Id. ¶¶ 180-182.) Another exclusive D-Blaze® distributor, Network Distributors, "informed an Osmose employee in 2009 that Network Distributors sold D-Blaze® wood products to the Department of the Army for use at two jobsites at the Fort Bragg military base." (Id. ¶¶ 185-188.)

Relator Osmose alleges that "Defendants' practices described in this Second Amended Complaint constitute 'claims' for payment submitted under the Act and, in particular, under 31 U.S.C. § 3729(b)(2)." (Id. ¶ 192.) Specifically, Defendants and their employees and agents knowingly presented or caused to be presented fraudulent claims to the United States Government, and knowingly made false records or statements that directly resulted in improper payments being made by the Government. (Id. ¶¶ 193-195, 200.) Accordingly, Relator Osmose commenced the instant qui tam action on behalf of the United States in May 2009.  As required by the FCA, the complaint was initially filed under seal to allow the Government to determine whether to intervene in the action.  After receiving numerous extensions of the sealing order, the Government filed a notice in June 2012 indicating that it was "not able to decide, as of the Court's deadline, whether to proceed with the action," therefore the Government was "not intervening at this time." (Docket No. 30.)

After being granted an extension of time in which to do so, Relator Osmose served an Amended Complaint on Defendants in November 2012.  A Second Amended Complaint was filed on March 15, 2013, and is currently the operative pleading in this case. Defendants now move to dismiss this Second Amended Complaint for failure to state a

7

claim.

## III. DISCUSSION

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12 (b)(6), a court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiffs' favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions.  Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Further, Defendants correctly assert that a claim made under the False Claims Act is subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1476-77 (2d Cir. 1995) (finding it "self-evident that the FCA is an anti-fraud statute"), cert denied, 517 U.S. 1213 (1996). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This provision does not conflict with the FCA's caveat that "no proof of specific intent to defraud is required" to state a claim under it, see 31 U.S.C. § 3729(b)(1)(B), inasmuch as Rule 9(b) similarly allows for "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged

8

generally." Fed. R. Civ. P. 9(b); see Gold, 68 F.3d at 1477. "Rule 9(b) is designed to further three goals: (1) providing a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protecting a defendant from harm to his reputation or goodwill; and (3) reducing the number of strike [or other such nuisance] suits." DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987). Accordingly, a claim sufficiently stated in accordance with this rule must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993).

In the single cause of action asserted in the Second Amended Complaint, Relator Osmose alleges that Defendants violated §§ 3729(a)(1)(A) and (a)(1)(B) of the False Claims Act. Defendants argue that the complaint must be dismissed because these claims are improperly based upon information and belief; contain vague allegations rather than the sufficient particularity required for fraud claims; and do not contain any allegation that would, if true, establish the objective falsity or materiality of any specific claim. Relator Osmose responds that the Second Amended Complaint alleges facts that are peculiarly within Defendants' knowledge, and that additional allegations made upon information and belief are supported by a statement of facts describing the basis for that belief. Osmose further argues that there is no "time, place, contents and identity" requirement where a relator alleges a scheme to cause third parties to defraud the Government.

## A.    Section 3729(a)(1)(A)

Prior to May 20, 2009, this section, then found at section 3729(a)(1), imposed liability on any person who "knowingly present[ed], or cause[d] to be presented, to an

officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval."   Based on the plain language of the statute, the prior version was interpreted as requiring an allegedly fraudulent claim to be presented directly to a governmental or military employee, thereby precluding liability for false claims presented to a governmental contractor even if governmental funds were expended as a result.  See United States ex rel. Totten v. Bombadier Corp., 380 F.3d 488, 502 (D.C. Cir. 2004) (no liability for allegedly fraudulent claim presented to Amtrack, not the U.S. Government), cert denied, 544 U.S. 1032 (2005).

As a result of what was considered to be an erroneous interpretation of the law, Congress enacted the Fraud Enforcement Recovery Act of 2009 ("FERA"), Pub.L. No. 111–21, § 4, 123 Stat. 1617 (2009) to amend the FCA and, among other things, "clarif[y] that liability under section 3729(a) attaches whenever a person knowingly makes a false claim to obtain money or property, any part of which is provided by the Government without regard to whether the wrongdoer deals directly with the Federal Government; with an agent acting on the Government's behalf, or with a third party contractor, grantee, or other recipient of such money or property."  S. Rep. No. 111-10, 2009 WL 787872, * 11 (2009). The current version therefore imposes liability on a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," when such conduct occurs on or after May 20, 2009, FERA's effective date.  See  31 U.S.C. § 3729(a)(1)(A);  Pub.L. No. 111–21, § 4(f), 123 Stat. 1617 (2009) .

Relator Osmose does not allege that Defendants presented any fraudulent claims directly to the U.S. Government, but relies solely on allegations that they knowingly or recklessly sold deficient fire retardant chemical treatments to wood treaters and distributors

who in turn contracted with the Government for the sale of fire retardant wood and plywood.   Relator Osmose therefore can only establish liability under this section if Defendants' conduct occurred on or after May 20, 2009.   As discussed further below, because it cannot be determined from the allegations in the Second Amended Complaint whether any of Defendants' alleged improper conduct occurred after the effective date of the amendment, Osmose has failed to state a violation of 3729(a)(1)(A) with sufficient particularity.

**B.     Section 3729(a)(1)(B)**

This section imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).   As with section 3729(a)(1)(A), the current version of this section was enacted in May 2009 to eliminate the requirement of proof that the defendant intended for the Government itself to pay the false or fraudulent claim. S. Rep. No. 111-10, 2009 WL 787872, *11 (2009)(citing Allison Engine Co. v. U.S. ex rel Sanders, 553 U.S. 662, 668-9, 128 S. Ct. 2123, 170 L. Ed. 2d 1030 (2008)).[3] Congress chose, however, to make this amendment effective "as if enacted on June 7, 2008, and applicable to all claims under the [FCA] that are pending on or after that date." Pub.L. No. 111–21, § 386, 123 Stat. 1617 (2009).

There has been some debate among the circuit courts as to whether "all claims" refers to pending court cases or actual claims for payment. United States ex rel. Drake v.

---

[3]The prior version of § 3729(a)(1)(B), then found at subsection (a)(2), imposed liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

NSI, Inc., 736 F. Supp. 2d 489, 497 (D. Conn. 2010); compare Sanders v. Allison Engine Co., Inc., 703 F.3d 930, 942 (6th Cir. 2012)(applying effective date to pending judicial cases), *cert denied*, 133 S. Ct. 2855 (2013); and United States ex rel. Yannacopoulos v. Gen. Dynamics, 652 F.3d 818, 822 n. 2 (7th Cir. 2011) (same), with United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1051 n. 1 (9th Cir. 2011) (finding that amendment applied retroactively to requests or demands for money or property pending on or after of June 7, 2008); and Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1327 n. 3 (11th Cir. 2009)(same). In determining that Congress intended that this amendment apply to claims for payment pending on June 7, 2008, several courts have looked to the distinction made by Congress in the following provision of section 4(f) of FERA:

> The amendments made by this section shall take effect on the date of enactment of this Act and shall apply to conduct on or after the date of enactment, except that--
>
>> (1) subparagraph (B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to **all claims under the False Claims Act** (31 U.S.C. 3729 et seq.) that are pending on or after that date; and
>>
>> (2) section 3731(b) of title 31, as amended by subsection (b); section 3733, of title 31, as amended by subsection (c); and section 3732 of title 31, as amended by subsection (e); **shall apply to cases pending** on the date of enactment.

Pub.L. No. 111–21, § 4(f), 123 Stat. 1617 (2009) (emphasis added); see United States ex rel. Carpenter v. Abbott Laboratories, Inc., 723 F. Supp. 2d 395, 402, n. 15 (D. Mass. 2010) (acknowledging that interpreting "claims" to mean judicial proceedings was not implausible, but nonetheless finding that "subsequent case law has almost uniformly

interpreted 'claims' to mean claims for reimbursement"); see also United States ex rel. Putnam v. E. Idaho Reg'l Med. Ctr., 696 F. Supp. 2d 1190, 1196 (D. Idaho 2010); United States v. Chubb Inst., Civil Action No. 06–3562, 2010 WL 1076228, *4 n. 10 (D.N.J. Mar. 22, 2010); United States ex. rel. Baker v. Cmty. Health Sys., Inc., 709 F. Supp. 2d 1084, 1107-8 (D.N.M. 2010); United States v. Science Applications Int'l Corp., 653 F. Supp. 2d 87, 106-7 (D. D.C. 2009), aff'd in part, vacated in part on other grounds, 626 F3d 1257 (D.C. Cir. 2010). If Congress had intended for the amendment to 3729(a)(1)(B) to apply to all pending judicial proceedings, the same "cases pending" language could easily have been used in both subsections. Science Applications Int'l Corp., 653 F. Supp. 2d at 107; see United States ex rel. Bennett v. Medtronic, Inc., 747 F. Supp. 2d 745, 763 (S.D. Tex. 2010).  This interpretation has also seen support in the fact that a "claim" is defined by the FCA as "any request or demand, whether under a contract or otherwise, for money or property." 31 U.S.C. § 3729(b)(2)(A) (previously subsection (c)); Science Applications Int'l, 653 F. Supp. 2d at 107.

The Second Circuit has not expressly discussed the issue. It has, however, considered the amendment to be retroactively effective in at least one case with respect to judicial proceedings pending on or commenced after June 7, 2008, albeit without elaboration. United States ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d 94, 113 (2d Cir. 2010), rev'd on other grounds, 131 S. Ct. 188 (2011). Absent clarification or reversal by the Second Circuit, this Court is bound by that decision. See United States v. Karron, 750 F. Supp. 2d 480, 486 (S.D.N.Y. 2011), aff'd, 481 F. App'x. 703 (2d Cir. 2012); United States ex rel. Drake, 736 F. Supp. 2d at 497.  The amended version of 3729(a)(1)(B) therefore applies to all allegedly fraudulent claims at issue in the present action, inasmuch as this

13

case was commenced after June 7, 2008.  Accordingly, Relator Osmose is therefore not required to allege or establish that Defendants intended for the Government itself to pay the false or fraudulent claims.

## C.    Sufficiency of the Allegations

As Defendants argue, the Second Amended Complaint does not contain adequate allegations of particular fraudulent sales to the U.S. Government.  Relator Osmose has alleged only one specific instance of a sale of potentially deficient D-Blaze® SYP plywood. (Sec. Am. Compl. ¶ 178.)  Many of the additional allegations of sales are based upon only information and belief, and all fail to specify if the D-Blaze® product sold was either SYP or Douglas Fir plywood, the only D-Blaze® products Relator Osmose alleges failed relevant fire retardant tests.  (Id. ¶¶ 143-147, 152, 164, 169, 170, 172, 174, 176-177, 180, 183, 186, 191.)

Generally, Rule 9(b) pleadings cannot be based upon information and belief, with the exception "that fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based." DiVittorio, 822 F.2d at 1247.  Thus, contrary to Relator Osmose's argument, allegations upon information and belief are not appropriate for either 'facts peculiarly within the opposing party's knowledge' or where supported by a statement of facts upon which the belief is based.  (See Relator's Mem in Opp'n at 7-8, Docket No. 56.)  Instead, both elements must be met.

Here, Relator Osmose has failed to establish that facts regarding the sales of D-Blaze® SYP or Douglas Fir plywood to the U.S. Government are peculiarly within Defendants' knowledge.  As alleged in the Second Amended Complaint, Defendants sold

14

purportedly defective D-Blaze® fire retardant chemical treatment products to wood treaters and distributors, who in turn sold wood treated with these products to the Government. There is no allegation that Defendants had any control over or knowledge of these sales. Accordingly, information about any claims tendered to the Government for treated wood improperly labeled as fire retardant is obtainable from these third parties or the Government itself, not from Defendants. United States ex rel. Siegel v. Roche Diagnostics, Corp., – F. Supp. 2d –,  2013 WL 6847689, *5 (E.D.N.Y. 2013) (relaxation of Rule 9(b)'s pleading requirement inappropriate where claim information was in the hands of third party medical providers); United States ex rel. Polansky v. Pfizer, Inc., No. 04–cv–0704 (ERK), 2009 WL 1456582, *8 (E.D.N.Y. May 22, 2009) (same); (see Sec. Am. Compl. ¶ 189 (identifying third-party employees who would have knowledge of sales to the Government).

Moreover, even considering those allegations improperly made on information and belief, the Second Amended Complaint fails to sufficiently "(1) specify the statements that the [relator] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" with respect to any single claim paid by the Government. Mills, 12 F.3d at 1175.  As noted above, only one allegation specifies a sale of a D-Blaze® product that failed a compliance test: "In a telephone conversation with an Osmose employee in 2009," a Bowie employee confirmed that the company had "sold or delivered D-Blaze® SYP plywood to the United States Navy." (Sec. Am. Compl. ¶ 178.)  However, this only identifies when the confirming telephone conversation occurred, it does not allege when the sale itself happened.  More importantly, there is no indication when Defendants sold the treatment process to Bowie, what representations were made at that time, and whether Bowie in fact treated the SYP

15

plywood in accordance with Defendants' instructions.   Instead, Relator Osmose acknowledges in the complaint that some treatment companies do not apply D-Blaze® in accordance with Defendants' instructions. (See Sec. Am. Compl. ¶¶ 146-48 (at least one wood treating company was applying D-Blaze® Douglas Fir plywood formula at a significantly higher retention level than called for by Defendants and was code compliant as a result).)   Absent a specific allegation that a distributor treated the wood sold to the Government with D-Blaze® in accordance with Defendants' instructions on the mistaken belief that, in doing so, the treated wood would be code compliant and then marketed it to the Government based on that fact, there is no basis to find that Defendants "knowingly made or caused to be made, a false record or statement material to a false or fraudulent claim" for fire retardant wood or plywood.   31 U.S.C. § 3729(a)(1)(B).

Relator Osmose nonetheless argues that, when applied to *qui tam* actions, Rule 9(b) does not require a relator to meet the "time, place, contents and identity" standard for each specific false claim, but instead he or she may allege a scheme to cause third parties to submit false claims, "under circumstances where the relator cannot be expected to have knowledge of the particular claims – precisely the situation here." (Relator's Mem in Opp'n at 9-10.)   For this proposition, Relator Osmose relies on United States ex rel. Grubbs v. Kanneganti, which held that "a claim under the False Claims Act and a claim under common law or securities fraud are not on the same plane in meeting the requirement of "stat[ing] with particularity" the contents of the fraudulent misrepresentation." 565 F.3d 180, 189 (5th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)); see also United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 853-54 (7th Cir. 2009) (not essential for relator to produce invoices where complaint stated sufficient allegations from which a plausible inference that the

16

defendant caused a fraudulent claim to be presented to the Government could be made). Specifically, <u>Grubbs</u> held that "a plaintiff does not necessarily need the exact dollar amounts, billing numbers, or dates to prove to a preponderance [of the evidence] that fraudulent bills were actually submitted." 565 F.3d at 190.  Instead, "a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." <u>Grubbs</u>, 565 F.3d at 190.

Initially, this Court finds that the Second Amendment Complaint would not survive application of this more relaxed standard.  It must be remembered that the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.' " <u>Johnson v. Univ. of Rochester Med. Ctr.</u>,  686 F. Supp. 2d 259, 265 (W.D.N.Y. 2010) (quoting <u>Polansky</u>, 2009 WL 1456582 at *5), *appeal dismissed*, 642 F.3d 121 (2011). <u>Grubbs</u> does not hold differently, it simply states that reliable indicia of claim submission can be established without pleading "exact dollar amounts, billing numbers, or dates" of each separate claim.  565 F.3d at 190.

Here, however, the apparent theory underlying Relator Osmose's FCA cause of action depends heavily on the independent actions of various third parties with respect to the use of certain D-Blaze® products in accordance with Defendants' instructions and the subsequent sale of the same.  However, without more specific allegations identifying those wood treaters or distributors, when and what products they purchased from Defendants, their compliance with Defendants' instructions for treating wood based on the belief that doing so would result in their products being sufficiently fire retardant, *and* their subsequent

17

sale of these products to the U.S. Government, the allegations in the Second Amended Complaint are simply too tenuous to constitute even the "particular details of a scheme," much less "reliable indicia [leading] to a strong inference that [fraudulent] claims were actually submitted." Grubbs, 565 F.3d at 190; Johnson, 686 F. Supp. 2d at 268 (no claim stated under even a relaxed standard in the absence of any sufficiently identified case of a fraudulent bill being presented). Indeed, the complaint states only an attenuated possibility that a fraudulent claim might have been submitted.

Further, although the Second Circuit has not specifically addressed this issue, "the weight of the authority from district courts within this Circuit is that where an alleged FCA violation involves the submission of a false claim to the Government for reimbursement, the details of that false claim must be pled with particularity." United States ex rel. Siegel, 2013 WL 6847689 at *4.

> Though "[u]nderlying schemes and other wrongful activities that result in the submission of fraudulent claims are included in the 'circumstances constituting fraud or mistake' that must be pled with particularity pursuant to Rule 9(b)," these "pleadings invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims submitted to the government that constitute the essential element of an FCA qui tam action."

United States ex rel. Mooney v. Americare, Inc., No. 06–CV–1806, 2013 WL 1346022, *3 (E.D.N.Y. Apr. 3, 2013) (quoting United States ex rel. Karvelas v. Melrose–Wakefield Hosp., 360 F.3d 220, 232–33 (1st Cir.2004), abrogated on other grounds by Allison Engine Co., 553 U.S. 662)); see United States ex rel. Chapman v. Office of Children & Family Servs. of State of New York, No. 1:04–CV–1505, 2010 WL 610730, *4 (N.D.N.Y. Feb.16, 2010) (allegation of "elaborate scheme" lacked requisite particularity where accompanied by only summary conclusion that false claims were submitted to the government), aff'd, 423 F.

App'x 104 (2d Cir.2011); <u>Polansky</u>, 2009 WL 1456582 at *8 (fraudulent scheme must be linked to submission of false claims); <u>United States ex rel. Smith v. New York Presbyterian Hosp.</u>, No. 06 Civ. 4056(NRB), 2007 WL 2142312, *6-7 (S.D.N.Y. July 18, 2007) ("sketch[ed] out" allegations of scheme insufficient absent detail about the theory of fraud and any specific fraudulent claim).   "Thus, a relator cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false claims must have been submitted." <u>Polansky</u>, 2009 WL 1456582 at *5; <u>Johnson</u>, 686 F. Supp. 2d at 266.   Instead, "the claim must still allege a factual nexus between the improper conduct and the resulting submission of a false claim to the government." <u>Johnson</u>, 686 F. Supp. 2d at 266.

Here, Relator Osmose argues that the nexus between Defendants' improper conduct and the resulting submission of fraudulent claims to the Government by third-party distributors is as follows: "[B]ecause the Government buys significant quantities of FRTW/FRTP, and because D-Blaze® holds a significant market share and was one of only a few pre-approved brands of FRTW/FRTP on the [Department of Defense's Qualified Products List], it necessarily follows that some significant portion of Government purchases must have been filled with D-Blaze® products." (Relator's Mem in Opp'n at 14; <u>see</u> Sec. Am. Compl. ¶ 86.)  This market-share theory of causation is patently insufficient under both this Circuit's Rule 9(b) requirements and the more relaxed *qui tam* pleading standards of the other jurisdictions cited by Relator Osmose.[4] <u>See</u> <u>United States ex rel. Carpenter</u>, 723

---

[4]In light of this Court's conclusions, Defendants' objective falsity and materiality arguments need not be considered at this time.  Similarly, Defendants' motion to deem certain documents incorporated into the Second Amended Complaint (Docket No. 51) is moot.

F. Supp. 2d at 406 (a " 'guesstimate' derived from anecdotal experience" insufficient to state Rule 9(b) causation). Defendants' motion to dismiss the Second Amended Complaint is granted.

**D.    Leave to Replead**

Generally, although district courts have broad discretion on this issue, leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a).  The present case has been pending for over four years.  This Court acknowledges that this delay is not the fault of Relator Osmose, as a significant number of extensions were granted to the Government for consideration of intervention.  Nonetheless, Relator Osmose has already amended the complaint twice, once with new counsel, and does not request that it be given another chance to amend the complaint in the event this Court finds dismissal warranted. The Second Amended Complaint is therefore dismissed with prejudice. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1132 (2d Cir. 1994) (dismissal with prejudice within bounds of discretion where plaintiff previously amended complaint and did not request leave to do so again).

## IV. CONCLUSION

Relator Osmose failed to state a claim under either 31 U.S.C. § 3729(a)(1)(A) or (a)(1)(B) with the particularity required by Rule 9(b).  Defendants' motion to dismiss is therefore granted.

## V. ORDERS

IT HEREBY IS ORDERED that Defendants' Motion to Dismiss the Second Amended Complaint (Docket No. 50) is GRANTED in its entirety and this complaint is

dismissed with prejudice;

FURTHER, that Defendants' Motion to Deem Certain Materials Incorporated into the Complaint (Docket No. 51) is DISMISSED as moot;

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated: January 19, 2014
      Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                               Chief Judge
                                United States District Court